# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DAVID K.,**

            **Plaintiff,**

                                             **Case No. 1:20-cv-12419**
    **v.**                                   **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

            **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff David K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on September 17, 2018, and May 28, 2019, respectively, alleging that he has been

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

disabled since June 2, 2016. R. 60, 82, 151–55, 165–74. The applications were denied initially and upon reconsideration. R. 86–90, 92–94. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 95–96. Administrative Law Judge ("ALJ") Jennifer Pustizzi held a hearing on February 27, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 42–59. In a decision dated March 13, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 2, 2016, the alleged disability onset date, through the date of that decision. R. 18. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 7, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On March 23, 2021, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

     Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

4

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through

four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92

(3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be

disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. R. 12. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 2, 2016, his alleged disability onset date, and the date of the ALJ's decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spine degenerative disc disease, osteoarthritis of bilateral knees, and obesity. *Id*. The ALJ also found that Plaintiff's diagnosed hypertension, diabetes mellitus, diverticulitis, and obstructive sleep apnea were not severe. R. 12–13.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 13–17. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a security officer. R. 17. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 2, 2016, his alleged disability onset date, through the date of the decision. R. 18.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal

standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 19.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

William Young, M.D., examined Plaintiff on December 11, 2018. R. 574–82. Plaintiff's "Chief Complaint" was diabetes management, R. 574, but he also complained of bilateral knee pain, R. 575, 580. Plaintiff denied, *inter alia*, difficulty with concentration or excessive daytime sleeping and memory loss. R. 578. Upon physical examination, Dr. Young noted that Plaintiff was in no acute distress, had normal attention span and concentration, normal feet with no edema in any extremity, and normal pulses in all four extremities. R. 578–79. Dr. Young noted no deformity or scoliosis in Plaintiff's thoracic and lumbar spine. R. 578. Dr. Young continued Plaintiff's prescriptions, ordered x-rays of the knees, referred Plaintiff to orthopedics, counseled him about the importance of regular exercise and limiting his intake of sodium, and encouraged him to lose weight. R. 580–81. Dr. Young further instructed Plaintiff to schedule a follow-up appointment in one month. R. 581.

Dr. Young again examined Plaintiff on August 14, 2019. R. 600–06. Plaintiff complained of recurrent headache, hypertension, and persistent knee pain, worsened by weight-bearing activities. R. 602. Plaintiff also discussed his applications for disability benefits with Dr. Young. *Id*. Upon physical examination, Dr. Young noted, *inter alia*, joint line tenderness in Plaintiff's knees and bilateral crepitus, normal pulses in all four extremities, and no clubbing, cyanosis, or edema in any extremity. R. 602–03. Dr. Young also noted no focal deficits, grossly intact cranial nerves II-XII with normal sensation, reflexes, coordination, muscle strength, and tone. R. 603. Under the heading "Impression & Recommendations[,]" Dr. Young noted "Problem #1" as

8

hypertension and "Problem #2" as diabetes mellitus, type 2, controlled. R. 603. Dr. Young instructed Plaintiff to schedule an orthopedic follow-up examination. R. 604.

On December 3, 2019, Dr. Young completed a three-page, fill-in-the-blank, and check-the-box form entitled, "Physical Impairment Questionnaire." R. 613−15. In response to the question asking him to describe the nature, frequency, and length of contact with Plaintiff, Dr. Young responded, "12/11/2018, 8/14/19, 12/3/19[.]" R. 613. Dr. Young diagnosed osteoarthritis and noted that Plaintiff's prognosis was "[d]eferred to surgery[.]" *Id.* Dr. Young opined that Plaintiff's symptoms associated with his impairments were severe enough to "[c]onstantly" interfere with the attention and concentration needed to perform simple work-related tasks. *Id.* Dr. Young left blank the question asking him to identify any side effects of Plaintiff's medications and denied that Plaintiff would need to recline or lie down during an eight-hour workday. *Id.* Dr. Young opined that, in a competitive work situation on an ongoing basis, Plaintiff could walk less than one city block without rest or significant pain, could sit for thirty minutes at one time, and could stand/walk for 10 minutes at a time. *Id.* According to Dr. Young, in an eight-hour work day, Plaintiff could sit for a total of four hours and stand/walk for a total of three hours. *Id.* Plaintiff would need a job that permitted shifting positions at will from sitting, standing, or walking and would need to take unscheduled breaks every hour for five to ten minutes during an eight-hour workday. *Id.* Plaintiff could frequently (defined as "1/3 − 2/3 of the 8-hour workday") lift and carry ten pounds or less in a competitive work situation, occasionally (defined as "less than 1/3 of the 8-hour workday") lift and carry twenty pounds, and never lift and carry fifty pounds. R. 614. Dr. Young denied that Plaintiff had any limitations in his ability to repetitively reach, handle, or finger. *Id.* Dr. Young estimated that Plaintiff would be absent from work more than four times as a result of his impairments or treatments. *Id.* Dr.

Young denied that Plaintiff was a malingerer and agreed that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. *Id*. In response to the question whether Plaintiff was physically able to work an eight-hour day, five days a week, on a sustained basis, Dr. Young checked the box marked "No." *Id*. Dr. Young's signature block reflected his specialty as internal medicine. *Id*.

## V.   DISCUSSION

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination for a limited range of light work that permitted the performance of his past work as a security officer because the ALJ erred in weighing the opinions of Plaintiff's treating physician, William Young, M.D. *Plaintiff's Memorandum of Law*, ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and

stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant is able to lift 20 pounds occasionally and 10 pounds frequently, carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, stand for 4 hours and walk for 4 hours. The claimant is able to push and pull as much as he can lift and carry. In addition, the claimant can climb ramps and stairs occasionally, climb ladders occasionally, balance occasionally, stoop frequently, kneel occasionally, crouch frequently and crawl occasionally.

R. 13–14. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, a May 2017 x-ray of Plaintiff's right knee that revealed tricompartmental degenerative changes and medial meniscal tear with extrusion; December 2018 x-rays of the bilateral knees that revealed tricompartmental degenerative changes, right greater than left, with advanced joint space narrowing involving the right knee medially and chondrocalcinosis present and a small suprapatellar joint effusion of the right knee; the fact that Plaintiff was discharged from physical therapy in May 2017, after four sessions, due to noncompliance with treatment and his failure to attend his scheduled appointments; a June 2017 consultative examination by David Clements, M.D., which revealed that Plaintiff had a body mass index of approximately 32.95, indicative of obesity; findings that Plaintiff's gait was nonantalgic, Plaintiff's back was minimally tender and his hips and knees moved freely with a normal range of motion in his back for his age, straight leg raising was negative, and neurologic examination of his bilateral lower extremities was normal, that May 2017 x-rays of the lumbar spine revealed only mild degenerative changes, and x-rays of the right knee demonstrated medial compartment arthritis; the fact that Dr. Clements

diagnosed Plaintiff with chronic low back pain and recommended that Plaintiff quit smoking and continue exercises, heat application, and use of anti-inflammatory medication; the fact that examinations consistently revealed negative straight leg raise with good range of motion in his lumbar spine; the findings of a July 2017 examination by David Gealt, D.O., who found no swelling and crepitus along the patellofemoral compartment of the left knee, with a range of motion that was just short of normal with no instability, scant effusion and positive crepitus along with patellofemoral compartment of the right knee, with a range of motion just short of full and no instability noted; the fact that Dr. Gealt recommended a knee brace and ice and prescribed glucosamine and chondroitin but that Plaintiff waited several weeks before undergoing injections as recommended by Dr. Gealt; a May 2018 prescription of Naproxen for Plaintiff's knee pain; a May 2018 examination of Plaintiff's lumbar spine that was normal with no deformities indicated; a January 2019 follow up examination with Dr. Gealt, after almost a year hiatus in treatment, during which Plaintiff reported continued bilateral knee pain and Dr. Gealt's noted crepitus and range of motion in the knees just short of normal; Dr. Gealt's diagnoses of osteoarthritis of the bilateral knees and injection at the right knee; Dr. Gealt's comment that Plaintiff was not ready for a total knee replacement; bilateral injections in February 2019 and January 2020 even though Plaintiff testified that the injections helped his pain for only approximately two months. The ALJ also characterized the opinions of the state agency reviewing medical consultants that Plaintiff would be limited to light exertion with only occasional climbing, balancing, stooping, kneeling, crouching and crawling, but he could never climb ladders, ropes or scaffolds as "generally persuasive as supported by and consistent with the medical evidence of record[,]" but explaining further that "the complete restriction to climbing ladders is not persuasive as well as the environmental limitations are not entirely supported by

the medical evidence of record" because Plaintiff's sleep apnea and diabetes were controlled with medication and Plaintiff's reported ability to ride a motorcycle was "inconsistent with these above limitations." The ALJ noted that Plaintiff was able to drive, attend his son's football games, and watch television and focus on what he is watching; that Plaintiff reported that he could lift a gallon of water and that he is able to lift up to twenty pounds and walk approximately thirty minutes before he has to sit down, and that despite allegations of disabling pain, Plaintiff was able to ride his motorcycle; the fact that although Plaintiff reported taking daily naps, in February 2018 and June 2018, he also admitted that he wakes up feeling refreshed and that he does not experience daytime fatigue or sleepiness. The ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" R. 14–16. The ALJ also explained as follows:

> Moreover, the record supports that the claimant has only required conservative treatment for his back and knee impairments. Claimant treated on only a few occasions for his back with only 4 visits at physical therapy in 2017. Moreover, back examinations have been essentially normal. As to his knee impairments, his treatment included injections and Naproxen. The frequency and extent of the treatment sought by claimant is not comparable with the degree of the claimant's complaints. Although there are no earnings reported for the year 2017, treatment notes indicate claimant to be working part time on the weekends in security (Exhibit 3F page 93).

> Each of these factors suggests that the claimant's symptoms do not limit his activities to the extent alleged. Thus, while the claimant has impairments that more than minimally impact his ability to engage in work related activities, the degree of impairment does not render him more limited than accounted for in the above residual functional capacity.

R. 16. The ALJ summarized her findings:

> In sum, the medical evidence indicates that the claimant has been diagnosed with lumbar spine degenerative disc disease, osteoarthritis of bilateral knees and obesity.

> However, as noted above, the claimant's activities of daily living, conservative and sporadic treatment that includes successful injections and pain medication, indicates that the claimant is not more limited than to light exertional work with the above limitations. Thus, based on the record as a whole, consistent with the notes, findings, and medical opinions that are discussed above, claimant retains the residual functional capacity to perform work activities consistent with the residual functional capacity assessment above.

R. 17. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429. Plaintiff, however, challenges this determination, arguing that the ALJ failed to properly consider the Dr. Young's opinions. *Plaintiff's Memorandum of Law*, ECF No. 18; *Plaintiff's Reply Brief*, ECF No. 20.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[3] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

_____

[3] As previously noted, Plaintiff's claims were filed on September 17, 2018, and May 28, 2019.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of

medical opinions and prior administrative medical findings" and articulate in the "determination

or decision how persuasive [she] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b),

416.920c(b). "Specifically, the ALJ must explain how [she] considered the 'supportability' and

'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—

explain how [she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No.

1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2)).

In this case, the ALJ specifically considered Dr. Young's opinion, explaining as follows:

On December 3, 2019, Dr. William Young provided a medical source statement indicating claimant could occasionally lift up to 20 pounds, sit for approximately 4 hours in an 8-hour workday and stand/walk for 3 hours in an 8-hour workday. In addition, he noted claimant could not work full time, would require hourly breaks for 5-10 minutes and would be absent approximately more than 4 times per month (Exhibit 7F). The undersigned finds this opinion to be less persuasive as not supported by the entirety of the medical evidence of record including underlying treatment notes by Dr. Young. More consistent with the record is the State agency consultants whose opinions are supported by the entirety of the medical evidence of record including records provided subsequent to their opinions as discussed in detail herein (Exhibits 2A and 3A). Specifically, the claimant notes an ability to ride his motorcycle and he noted that he is able to watch television and focus on what he is watching. He also noted an ability to drive and attend his son's football games, which is inconsistent with Dr. Young's restrictive opinion (Exhibits 4E, 2F page 11 and Hearing Testimony).

R. 16−17. Accordingly, after summarizing the record evidence described in more detail above,

the ALJ specifically considered the supportability and consistency factors and explained why Dr.

Young's treatment notes and other evidence in the record rendered his opinions regarding

Plaintiff's limitations less persuasive. R. 14–17. The Court finds no error with the ALJ's

reasoning in this regard. *See* 20 C.F.R. §§ 404.1520c(c)(1) (addressing the supportability factor

when considering medical opinions), 416.920c(c)(1) (same); 20 C.F.R. § 404.1520c(c)(2)

(addressing the consistency factor when considering medical opinions), 416.916c(c)(2) (same);

20 C.F.R. § 404.1513(a)(4) (explaining that the ALJ may receive evidence from nonmedical

sources, including evidence from the claimant); *Esther Marie H. v. Comm'r of Soc. Sec.*, No.

5:20-CV-00668, 2021 WL 5629076, at *6 (N.D.N.Y. Dec. 1, 2021) (finding that the ALJ

properly considered a physician's opinions under the new regulations as inconsistent with record

evidence where, *inter alia*, his findings were "inconsistent with Plaintiff's statements about her

activity level. Plaintiff testified she is capable of driving and completing household tasks such as

preparing meals and washing dishes"); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137,

at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence

extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not

required to repeat this information for the sake of elaborating on her findings of

persuasiveness."); *Zajac v. Comm'r of Soc. Sec.*, No. 1:20-CV-135, 2021 WL 1169466, at *4

(W.D. Mich. Mar. 29, 2021) (finding that the ALJ properly analyzed an opinion under §§

404.1520c(c)(1)–(2) and 416.920c(c)(1)–(2) where the ALJ "articulated proper bases for finding

the opinion unpersuasive, namely, consistently normal physical and mental examination

findings, and she supported her reasons with citations to specific evidence in the record"); *Erin

H. v. Saul*, No. 2:20-CV-00191, 2021 WL 1182366, at *9 (E.D. Wash. Mar. 29, 2021) (stating

that the "ALJ's finding that Dr. Clark's opinion is inconsistent with the longitudinal record was a

specific and legitimate reason, supported by substantial evidence to reject the opinion").

Plaintiff challenges the ALJ's consideration of Dr. Young's opinion, arguing first that Dr. Young's treatment notes support his opinion. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 12. However, Plaintiff's reliance on Dr. Young's diagnosis of osteoarthritis, *id*. (citing R. 613), is unavailing as, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec*., 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff also points to Plaintiff's reports of knee stiffness and knee pain that appear in Dr. Young's notes, *Plaintiff's Memorandum of Law*, ECF No. 18, p. 12 (citing R. 602, 613), but the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec*., No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Moreover, the ALJ in this case thoroughly explained why the record evidence did not fully support Plaintiff's subjective statements, R. 14–16, a credibility determination that Plaintiff does not challenge. Plaintiff also argues that Dr.

Young's treatment notes reveal that Plaintiff had joint line tenderness and crepitus in both knees. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 12 (citing R. 602). However, Plaintiff has not explained how Dr. Young's notes reflecting tenderness and crepitus in August 2019 is consistent with the extreme limitations outlined in Dr. Young's opinion in December 2019, particularly where Dr. Young, in those same treatment notes, did not specifically identify problems with Plaintiff's knees or mobility when he listed Plaintiff's two "Problem[s]" as hypertension and diabetes mellitus, type 2, controlled. R. 603.

Plaintiff goes on to argue that Dr. Young's opinion is consistent with other record evidence, including x-rays of Plaintiff's bilateral knees reflecting tricompartmental degenerative changes with advanced joint space narrowing involving the right knee and chondrocalcinosis and a small suprapatellar join effusion in the right knee. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 13 (citing R. 572). However, the ALJ specifically noted this evidence at step two, R. 14, and implicitly considered this evidence when finding Dr. Young's extreme opinion to be "less persuasive as not supported by the entirety of the medical evidence of record[.]" R. 16. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

19

Plaintiff also insists that Dr. Young's opinion is consistent with Dr. Gealt's records. *Plaintiff's Memorandum of Law*, ECF No. 18, p.13. The Court is not persuaded that Plaintiff's argument regarding this evidence undermines the ALJ's evaluation of Dr. Young's opinion. First, Plaintiff again relies on a simple diagnosis (osteoarthritis of the right knee) and Dr. Young's memorialization of Plaintiff's subjective complaints, which, for the reasons already explained, are not persuasive. *See Foley*, 349 F. App'x at 808; *Hatton*, 131 F. App'x at 879; *Phillips*, 91 F. App'x at 780; *Morris*, 78 F. App'x at 824–25. Next, Plaintiff contends that Dr. Gealt noted a reduced range of motion and tenderness with limited mobility and stiffness. *Plaintiff's Memorandum of Law*, ECF No. 18, p.13 (citing R. 284, 558). However, the ALJ specifically considered Dr. Gealt's notes and findings, and although Plaintiff fails to mention this fact, noted that Dr. Gealt found that Plaintiff's "range of motion [was] just short of full" with "no instability noted" on one occasion and, later, noted that Plaintiff's examination was "stable revealing crepitus and just short of normal range of motion in his knees." R. 15. Although Plaintiff correctly points out that Dr. Gealt administered injections to Plaintiff's knees, the ALJ specifically considered this treatment, *id.*, and implicitly considered it when assessing Dr. Young's opinion in light of the entire medical record. R. 16–17.

Plaintiff next complains that the ALJ failed to consider that Dr. Young's opinion was consistent with the treatment notes of a treating nurse practitioner, Bonnie Bovaird Jewart. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 13–14 (citing R. 499). However, because Plaintiff again simply relies on his subjective complaints memorialized in the notes of this practitioner, *see id.*, this challenge is unavailing. *See Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25.

Plaintiff further complains that the ALJ considered Plaintiff's activities when evaluating Dr. Young's opinion, contending that the ALJ did not explain how Plaintiff's attendance at his son's football games and watching television undermined Dr. Young's opinion and complaining, too, that the ALJ failed to consider additional limitations and restrictions in Plaintiff's activities. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 14−15; *Plaintiff's Reply Brief*, ECF No. 20, p. 6. Plaintiff's argument is not well taken. The ALJ properly considered Plaintiff's ability to attend his son's games and being able to watch television and focus on what he is watching when finding less persuasive Dr. Young's opinion that Plaintiff's symptoms would "[c]onstantly" interfere with the attention and concentration required to perform simple work-related tasks and that Plaintiff was unable to sit more than thirty minutes, would need hourly breaks lasting five to ten minutes, would be absent from work more than four times a month, and was incapable of working full-time. R. 16−17, 613; *see also* 20 C.F.R. § 404.1513(a)(4); *Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206–07 (3d Cir. 2015) (noting that daily activities such as, *inter alia*, driving "require at least some . . . mental concentration"); *Coleman v. Kijakazi*, No. 2:20-CV-733, 2022 WL 60510, at *4 (M.D. Fla. Jan. 6, 2022) (finding that substantial evidence supported the ALJ's reasons for discounting physicians' opinions under the new regulations where, *inter alia*, "the ALJ determined that Plaintiff has a number of daily activities that are inconsistent with both doctors' opinions[,]" including watching television); *D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("*Her ability to drive*, prepare meals, manage funds, shop, and take a cruise *also contradicted her claims that she had difficulty concentrating, remembering information*, and engaging in social activities.") (emphasis added); *Kinzebach v. Berryhill*, No. 16-CV-2114, 2018 WL 1023600, at *5 (N.D. Iowa Jan. 19, 2018), *report and recommendation adopted*, No. 16-CV-2114, 2018 WL 1020127 (N.D. Iowa Feb. 22,

2018) ("Kinzebach's reports of her activities of daily living (particularly that she can sit long enough to watch a movie or a softball game and that she can stand for more than an hour while cleaning and cooking) are inconsistent with Dr. Peterson's opined limitations that she can sit and stand for only thirty minutes at a time."). Moreover, Plaintiff's activities were just one factor that the ALJ considered when evaluating Dr. Young's opinion. Notably, and as previously discussed, the ALJ considered the entire medical record, including her finding as more persuasive the opinions of the state agency reviewing experts. R. 16−17; *see also Torres v. Comm'r of Soc. Sec.*, No. 6:19-CV-1662, 2020 WL 5810273, at *4−5 (M.D. Fla. Sept. 30, 2020) (rejecting the claimant's argument that a claimant's ability to do some activities of daily living does not mean that the claimant can work full-time where the "ALJ relied not only on his activities of daily living but also on the opinions of other doctors to find that the limitations in Dr. Steele's opinion were too restrictive, . . . and those opinions alone amount to substantial evidence"). To the extent that Plaintiff points to limitations in his own activities that he believes supports Dr. Young's extreme opinion, the Court, as previously noted, "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Finally, Plaintiff challenges the ALJ's characterization of his treatment as "conservative," noting that he attended physical therapy, underwent injections, and "had conversations with his doctor regarding surgery." *Plaintiff's Reply Brief*, ECF No. 20, pp. 4−5 (citing R. 50). Plaintiff's argument is not well taken. Courts in this circuit have characterized physical therapy and injections as conservative treatment. *See Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245–46 (3d Cir. 2020) (characterizing injections as "relatively routine and conservative treatment");

*Irwin v. Comm'r of Soc. Sec.*, No. CV 19-5109, 2020 WL 1888958, at *1 (E.D. Pa. Apr. 16, 2020) (finding that the ALJ "reasonably described" the claimant's "left knee treatment [which included physical therapy] as 'routine and conservative'"); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy"); *Herman v. Colvin*, No. CIV.A. 12-6640, 2013 WL 6909915, at *8 (D.N.J. Dec. 31, 2013) ("The ALJ also emphasized the conservative methods by which Plaintiff was treated. The record evidences treatment of pain medications, injections, and chiropractic treatment."). Although it is true that Plaintiff discussed possible surgery, the ALJ expressly noted that Dr. Clements did not recommend surgery. R. 15. Accordingly, Plaintiff has not persuaded this Court that the ALJ erred in characterizing Plaintiff's treatment as conservative.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Young's opinion.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 25, 2022                      *s/Norah McCann King*
                                                NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE


23